Kent J. Schmidt (SBN 195969)
schmidt.kent@dorsey.com
Jessica M. Leano (SBN 323677)
leano.jessica@dorsey.com
DORSEY & WHITNEY LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626-7655
Telephone:  (714) 800-1400
Facsimile:  (714) 800-1499

Attorneys for Defendant Luxy Hair Co.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBEKAH RODRIGUEZ,<br><br>             Plaintiff,<br><br>     v.<br><br>LUXY HAIR CO., a Nova Scotia company and DOES 1 through 10, inclusive,<br><br>             Defendants. | CASE NO: 3:23-CV-00657-LAB-BLM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>[Filed Concurrently with Notice of Motion and Motion to Dismiss, Declaration of Kent J. Schmidt, Request for Judicial Notice, and [Proposed] Order]<br><br>Date:         June 12, 2023<br>Time:         11:15 a.m.<br>Courtroom:  14A<br><br>Complaint Filed:  March 8, 2023<br>Trial Date:  Not set |

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................1

II. FACTS ............................................................................................................2

III. ARGUMENT ..................................................................................................4

    A. Legal Standards ...................................................................................4

    B. Luxy Is Not a Video Tape Service Provider Under the VPPA. ............4

    C. Plaintiff Has Not Alleged That She Is a "Consumer" With Standing to Assert a VPPA Claim Against Luxy. ................................7

        1. No Allegations of Any Payment ......................................................8

        2. No Commitment ...............................................................................9

        3. No Restricted Content.....................................................................10

IV. CONCLUSION .............................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al-Ahmed v. Twitter, Inc.*,
  603 F. Supp. 3d 857 (N.D. Cal. 2022) .................................................................................. 2

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..................................................... 4

*Austin-Spearman v. AMC Network Entm't LLC*,
  98 F. Supp. 3d 662 (S.D.N.Y. 2015) ............................................................................ 8, 9, 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..................................................... 4

*Czarnionka v. Epoch Times Ass'n*,
  2022 U.S. Dist. LEXIS 209067 (S.D.N.Y. Nov. 17, 2022) .................................................... 6

*Ellis v. Cartoon Network, Inc.*,
  803 F.3d 1251 (11th Cir. 2015) ..................................................................................... 7, 8, 9

*In re Facebook, Inc.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................................... 2

*Levitt v. Yelp! Inc.*,
  765 F.3d 1123 (9th Cir. 2014) ............................................................................................... 4

*Louth v. NFL Enter. LLC*,
  2022 U.S. Dist. LEXIS 163706 (D.R.I. Sep. 12, 2022) ......................................................... 6

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ................................................................................................. 4

*Papasan v. Allain*,
  478 U.S. 265 (1986) .............................................................................................................. 4

*Perry v. CNN, Inc.*,
  854 F.3d 1336 (11th Cir. 2017) ........................................................................................... 10

*Stark v. Patreon, Inc.*,
  _F. Supp. 3d_, 2022 U.S. Dist. LEXIS 187602 (N.D. Cal., Oct. 13, 2022) .................... 2, 5, 6

*In re Vizio, Inc.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...................................................................... 5, 6, 7, 8

*Yershov v. Gannett Satellite Info. Network, Inc.*,
  820 F.3d 482 (1st Cir. 2016) ................................................................................................. 8

**Statutes**

18 U.S.C. § 2710 .................................................................................................................. 1

18 U.S.C. § 2710(a)(1) ......................................................................................................... 7

18 U.S.C. § 2710(a)(4) ......................................................................................................... 5

18 U.S.C. § 2710(b)(1) ..................................................................................................... 5, 7

**Other Authorities**

2 Oxford English Dictionary 695 (1989) ............................................................................. 5

American Heritage Dictionary: Second College Edition 220 (1991) .................................. 5

*Developments in the Law – More Data, More Problems*, 131 Harv. L. Rev. 1715 (2018) .............................................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 4

Webster's New World Dictionary: Third College Edition 189 (1988) ................................ 5

Webster's Third New International Dictionary 302 (1981) ................................................. 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In this lawsuit, Plaintiff Rebekah Rodriguez attempts to fit a square peg into a round hole. She seeks to use a federal statute to advance a legal theory in a context that Congress never intended invoking a theory that finds no support in the plain language of the law or decisional authorities. In 1988, Congress passed the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, largely in response to a news story that contained a "self-consciously intrusive survey of Judge [Robert] Bork's video rental history." *Developments in the Law – More Data, More Problems*, 131 Harv. L. Rev. 1715, 1766 (2018). The statute protects the privacy of those who rent or subscribe to videos from providers of such video content.

Congress did not intend to create a catch-all statute that would allow any consumer to sue any defendant for any perceived invasion of privacy. Although the statute has been held to apply to current video streaming technology—*i.e.*, the Netflix-type businesses, not just the old school Blockbuster-type businesses—its core limitations remain, and its expansiveness does not reach every company that provides video content. Instead, the law is directed at "video tape service providers" and is intended to protect the privacy interests of consumers who *rent* or *buy* those providers' services.

Against this backdrop, Plaintiff seeks to use the VPPA to address what she claims is a Meta tracking pixel linked to a video on Defendant Luxy Hair Co.'s ("Luxy" or "Defendant") e-commerce website. Contending that this pixel reports visitors' personally identifiable information to Meta, she has brought a single cause of action under the VPPA, seeking an injunction and damages. Plaintiff's VPPA claim is deficient for two primary reasons made apparent from the discussion above.

*First*, based on the allegations in the Complaint, Luxy is merely an e-commerce company. It sells *products*—hair extensions, not video content. There are no allegations in the Complaint that Luxy sells or rents video content to subscribers. The fact that, like

many e-commerce companies, Luxy's website hosts some video content—videos of models demonstrating how the hair extensions can be used to transform and enhance their appearance—does not make Luxy anything akin to the Blockbuster of yesteryear or the Netflix or Hulu of today.  Luxy is not a proper defendant in a VPPA action.

*Second*, and just as critically, Plaintiff is not a proper party to assert the claim.  There are no plausible allegations supporting the conclusion that Plaintiff is a "subscriber" or "consumer" for purposes of the statute.  The fact that Plaintiff claims to have typed in her email address on a standard form to be added to a mailing list informing Luxy's potential customers of new products and deals does not make her a subscriber within the meaning of the statute.  It is commonly understood what is entailed in a video streaming "subscription" service—and Plaintiff's interactions with Luxy's website do not fit within that definition or the statute, including as the law has been defined in several cases.  For the foregoing reasons, the Court should grant Luxy's Motion to Dismiss without leave to amend.

## II.   FACTS

Plaintiff alleges that Defendant is an e-commerce company that operates a website to market and sell its products. (Compl., ¶ 5.)  Plaintiff further alleges that the website has video content, and the Complaint includes a screenshot of a model wearing a Luxy Hair product.  (Compl., ¶ 5.)

Defendant requests that the Court take judicial notice of its website which is central to Plaintiff's claim.[1]  The website, as depicted in both the Complaint and Defendant's

---

[1] As set forth more fully in Defendant's concurrently-filed request for judicial notice, courts have taken judicial notice of defendants' websites when the complaint alleges that the defendant's website violates the VPPA by transmitting PII to a third-party. *See Stark v. Patreon, Inc.*, _F. Supp. 3d_, 2022 U.S. Dist. LEXIS 187602, at *15-16 (N.D. Cal., Oct. 13, 2022) (taking judicial notice of website as incorporated into the complaint in connection with defendant's motion to dismiss VPPA claim based on its use of a pixel); *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 791 n.12 (N.D. Cal. 2019) (same); *see also Al-Ahmed v. Twitter, In*c., 603 F. Supp. 3d 857, 868-69 (N.D. Cal. 2022) (taking judicial notice of plaintiff's Twitter account, public posts, and other Twitter webpages as publicly-available documents submitted with Twitter's motion to dismiss plaintiff's claims for violation of various electronic communications laws).

Request for Judicial Notice, shows a standard and typical e-commerce portal for selling beauty accessories to the public.

Although this claim is brought under the VPPA and is premised on Luxy being a video service provider, it is remarkable what allegations are missing. Plaintiff does not allege that a subscription or other fee is required for a consumer to watch any promotional video. The only reasonable inference to be drawn is that any person can navigate to the website and view the videos in deciding whether to make a purchase, without subscribing to the video content.

Plaintiff then claims to be a "tester"—someone who trolls the internet looking for a claim, purporting to act in the interest of the public by filing these consumer class action lawsuits. (Compl., ¶ 22.) In a half-hearted attempt to satisfy a key element of a VPPA claim, Plaintiff next alleges that she "subscribed to Defendant's newsletter." (Compl., ¶ 21.) But Plaintiff provides no allegations explaining what this means. There are no allegations suggesting that Plaintiff paid anything under this "subscription." Even more remarkable, Plaintiff does not allege that she *subscribed* to any video content.

A cursory examination of the Luxy website shows that, like many e-commerce websites, Luxy allows a visitor to voluntarily submit an email address to receive promotional materials. Thus, the allegation as to "subscribing" appears to relate to simply signing up for offers, promotions and other commercial messages.

GET A DISCOUNT ON YOUR FIRST ORDER + INSIDER HAIR TIPS IN YOUR INBOX

Enter email address    SIGN ME UP

By signing up, you agree to receive Beauty Industry Group and its Affiliated Entities offers, promotions and other commercial messages. You are also agreeing to Beauty Industry Group and its Affiliated Entities conditions of use, Privacy Policy and Terms of Conditions. You may unsubscribe at any time.

Plaintiff then alleges that she has a Facebook account and during the past year, watched one or more videos on Luxy's website. (Compl., ¶¶ 18, 22-23.) Plaintiff claims to have gone to the Luxy website because she was "genuinely interested in learning more

about the goods and services offered" and because, again, she is a "tester." (Compl., ¶¶ 18, 22-23.) Plaintiff alleges a pixel found on the website was transmitted to Facebook. (Compl., ¶ 24.) Plaintiff finally warns that, while she brings her claim as an individual, she may amend the Complaint to add plaintiffs or class claims. (Compl., ¶ 27.)

### III. ARGUMENT

#### A. Legal Standards

To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

On a motion to dismiss, courts must construe the complaint in the light most favorable to the plaintiff and "take all the factual allegations in the complaint as true." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). But courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (requiring courts to "discount[]" allegations that "do nothing more than state a legal conclusion" when ruling on a motion to dismiss) (quoting *Iqbal*, 556 U.S. at 662).

The Complaint, on its face, falls far short of Rule 12(b)(6)'s pleading standards. Plaintiff's contention that she is a "subscriber" of Luxy's video content, unsupported by any facts, is a legal conclusion, not a factual conclusion. So too is Plaintiff's conclusion that Luxy is a "video tape service provider" subject to the provisions of the VPPA. Plaintiff cannot rely on these legal conclusions to meet her burden under Rule 12(b)(6) and survive a motion to dismiss.

#### B. Luxy Is Not a Video Tape Service Provider Under the VPPA.

The crux of the claim is that Luxy violated this provision: "A video tape service

provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection (d)." 18 U.S.C. § 2710(b)(1).  The statute defines a "video tape service provider":  "[T]he term 'video tape service provider' means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials, or any person or other entity to whom a disclosure is made under subparagraph (D) or (E) of subsection (b)(2), but only with respect to the information contained in the disclosure."  *Id*. § 2710(a)(4).

Plaintiff has not alleged sufficient facts to support her legal conclusion that Luxy is a "video tape service provider" because there are no facts alleging that it is "engaged in the business" of delivering video content.  Courts have addressed what it means to be "engaged in the business" of delivering video content under the VPPA.  "'[B]usiness' connotes 'a particular field of endeavor,' *i.e.*, a focus of the defendant's work." *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) (citing Webster's Third New International Dictionary 302 (1981) (def. 1d); The American Heritage Dictionary: Second College Edition 220 (1991) (defs. 1a, 1b); 2 Oxford English Dictionary 695 (1989) (def. 14b); Webster's New World Dictionary: Third College Edition 189 (1988) (def. 1)).

The Complaint alleges that Luxy sells beauty products and provides an example of a video apparently demonstrating the use of one of those products.  But the fact that Luxy uses media, including videos or still images, to depict its beauty products does not make it a video service provider.  There are no facts to show that Luxy is "engaged in the business" of providing video content.  The only reasonable inference to draw is that a video on Luxy's website is merely incidental to its business of selling hair extensions products.

The case law is in accord. In *Stark*, _ F. Supp. 3d _, 2022 U.S. Dist. LEXIS 187602, at *21, allegations that plaintiffs paid Patreon subscription fees to watch videos on its website were sufficient to establish that Patreon was "in the business" of delivering video

content. *Id*. at *22.

In *In re Vizio*, 238 F. Supp. 3d at 1211-22, the court held that a defendant may be "in the business" of delivering video content where it is both "substantially involved in the conveyance of video content to consumers [and] significantly tailored to serve that purpose." Thus, a provider of smart TVs "designed to enable" consumers to access Netflix, Hulu, YouTube, and Amazon video content was sufficiently alleged to be a "video tape service provider" under the VPPA. *Id*. at 1222.

Notwithstanding these examples of companies deemed to be "in the business" of delivering video content, not all businesses which provide video content in some format are subject to the VPPA. The *Stark* court posited that "[t]here is some authority for the proposition that not all who *deliver* videos are in the business of doing so." 2022 U.S. Dist. LEXIS 187602, at *21 (emphasis added).

The mere fact that Luxy has videos on its website does not make Luxy a "video tape service provider" under the VPPA.

Courts evaluating the scope of the VPPA have narrowly interpreted the VPPA's language in determining the type of video *content* that is subject to the VPPA. *See, e.g.*, *Czarnionka v. Epoch Times Ass'n*, 2022 U.S. Dist. LEXIS 209067, at *11-12 (S.D.N.Y. Nov. 17, 2022); *Louth v. NFL Enter. LLC*, 2022 U.S. Dist. LEXIS 163706, at *12 (D.R.I. Sep. 12, 2022). Plaintiff cites no authority for expanding the meaning of a "video tape service provider" as used in the same statute to encompass a hair products retailer which may incidentally have videos on its website.

Accordingly, the Complaint's allegations are inadequate to establish that providing video content is "a particular field of endeavor" for Luxy or "a focus of" Luxy's work. *In re Vizio*, 238 F. Supp. 3d at 1221. Luxy is not "in the business" of delivering video content within the meaning of the VPPA and cannot be a "video tape service provider" subject to the VPPA.

No case has held that an ordinary e-commerce retailer which uses a video on its

website for promotional purposes is a "video tape service provider" within the meaning of the VPPA.  Because Plaintiff has not alleged facts establishing that Luxy is a "video service provider," Plaintiff fails to plead an essential component of a VPPA claim.

### C. Plaintiff Has Not Alleged That She Is a "Consumer" With Standing to Assert a VPPA Claim Against Luxy.

Not only is Luxy not a proper defendant under the VPPA given the facts alleged, but Plaintiff is not a proper party with standing to assert a claim.  The VPPA only applies to a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning **any consumer** of such provider . . . "  18 U.S.C. § 2710(b)(1) (emphasis added).  The VPPA defines a "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(1).

The Complaint does not allege that Plaintiff rented or purchased any goods or services from Luxy.  (*See* Compl., ¶ 18.)  Although the Complaint alleges that Plaintiff "subscribes to Defendant's newsletter," which makes "Plaintiff a 'subscriber' and therefore a 'consumer' under the VPPA" (Compl., ¶ 21), this is insufficient and merely a legal conclusion.  Disregarding the Complaint's attempt to shoehorn Plaintiff into the definition of "subscriber," the case law illustrates why these allegations are insufficient to allege Plaintiff is a "subscriber" of Luxy's goods or services within the meaning of the VPPA.

Whether an individual is a "consumer" under the VPPA based on a *subscription* relationship turns on multiple factors.  At base, to be a "subscriber," there must be "some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." *In re Vizio*, 238 F. Supp. 3d at 1222 (citing *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1252 (11th Cir. 2015)).  "While a 'payment is not a necessary element of subscription,' it is 'one factor a court should consider when determining whether an individual is a 'subscriber' under the VPPA." *Id*. at 1223 (citing *Ellis*, 803 F.3d at 1256).  "Conventionally, 'subscription' entails an exchange between subscriber and provider

7
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 3:23-CV-00657-LAB-BLM

whereby the subscriber imparts money and/or personal information in order to receive a future and recurrent benefit, whether that benefit comprises, for instance, periodical magazines, club membership, cable services, or email updates." *Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015).

Other factors in the "subscriber" analysis are "registration, commitment, delivery, [expressed association], and/or access to restricted content." *Ellis*, 803 F.3d at 1256. These factors weigh against a finding that Plaintiff is a "subscriber" of Luxy's goods or services.

### 1.   No Allegations of Any Payment

The Complaint does not allege that Plaintiff has made any type of payment to Luxy. Rather, Plaintiff visited Luxy's website and proceeded to watch promotional videos of its hair extension products. (Compl., ¶¶ 23-24.) This weighs against Plaintiff being a "subscriber." In *Ellis*, the court found that a "person who downloads and uses a free mobile application on his smartphone to view freely available content, without more, is not a 'subscriber' . . . under the VPPA." 803 F.3d at 1252.

The videos Plaintiff claims to have viewed are "freely available content" on a freely-accessible website. There are no allegations indicating any payment from Plaintiff to access Luxy's website or watch the videos. That Plaintiff voluntarily signed up for a promotional "newsletter" is a red herring and a patent attempt to construct a "subscriber" relationship where one does not exist. (Compl., ¶ 21.) Indeed, the Complaint does not allege that signing up for this newsletter was a prerequisite or condition to accessing any media on Luxy's website. (*Compare* Compl., ¶ 21, *with Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F. 3d 482, 489 (1st Cir. 2016) (finding plausible allegations of a "subscriber" relationship where defendant's video content could only be accessed after the user provided defendant their personal information, such as their Android ID and mobile device's GPS location)).

Notably, the plaintiff in *Ellis* was not found to be a subscriber even though the

defendant's products and services did involve defendant Cartoon Network's video and media content. But even then, plaintiff's VPPA claim was doomed because he was not a "subscriber" of Cartoon Network's products or services for the reasons above. In contrast, here, the payment factor weighs even more heavily against Plaintiff because Luxy's videos are intended to promote hair products that Luxy sells on its website, not to encourage consumption of its video content in the first place.

### 2. No Commitment

Nor does the Complaint allege that Plaintiff had to create an account with Luxy or provide any information to Luxy to access the website or view the videos. Again, that Plaintiff voluntarily signed up for a promotional newsletter is a red herring. The Complaint does not allege that signing up for this newsletter was a prerequisite or condition to accessing any media on Luxy's website.

In *Ellis*, the commitment factor also weighed against plaintiff being a "subscriber" because plaintiff did not have to "sign up for or establish an account," "become a registered user," "receive a Cartoon Network ID," "establish a Cartoon Network profile," "sign up for any periodic services or transmissions," or "make any commitment or establish any relationship that would allow him to have access to exclusive or restricted content." 803 F.3d at 1257.

Here, the "commitment" factor further undermines Plaintiff's theory of a "subscription" relationship with Luxy. Plaintiff alleges that at some point "during the past year," she watched one or more videos on Luxy's website (Compl., ¶¶ 18, 22-23), and visited the website because she was "genuinely interested in learning more about the goods and services offered" and wanted to "test" Luxy's website (Compl., ¶¶ 18, 22-23). Even where, unlike here, a plaintiff alleges that they visited a website with the intent to watch video content, courts have found one-off, sporadic visits inadequate to establish "commitment." *See Austin-Spearman*, 98 F. Supp. 3d at 669 (finding commitment factor weighed against plaintiff's claim she was a subscriber under the VPPA absent allegations

9

that plaintiff's visits to defendant's website were "regular or even periodic" and plaintiff "evinced no desire to forge ties with" defendant); *accord Perry v. CNN, Inc.*, 854 F.3d 1336, 1344 (11th Cir. 2017) (noting that an "ephemeral investment and commitment" associated with accessing the defendant's content is "simply not enough" to become a subscriber).

Like the plaintiff in *Austin-Spearman*, Plaintiff could simply "decide to never visit [Luxy's] website ever again—and that decision will have zero consequences, costs, or further obligations." 98 F. Supp. 3d at 669. "Such casual consumption of web content, without any attempt to affiliate with or connect to the provider, exhibits none of the critical characteristics of 'subscription' and therefore does not suffice to render [plaintiff] a 'subscriber'" of Luxy's goods or services. *Id*.

### 3.   No Restricted Content

The Complaint does not allege that Plaintiff has gained the ability to access any restricted content on Luxy's website, another factor weighing against Plaintiff in the "subscriber" inquiry. The videos Plaintiff claims to have viewed are promotional videos. It would be illogical for Luxy to put videos meant to promote its products and entice potential customers to buy the products behind a paywall. Nor does Plaintiff allege that she was required to enter any information or reach some type of agreement with Luxy to view the videos. (*See* Compl., ¶ 23 (alleging only that "[d]uring the past year, Plaintiff visited the website and watched one or more videos")).

This factor, too, weighs against Plaintiff's legal conclusion that she "subscribes" to Luxy's goods and services.

Beyond mere legal conclusions, the Complaint is devoid of allegations establishing that Plaintiff is a subscriber within the meaning of the VPPA. To the contrary, the allegations in the Complaint and the VPPA case law cement that a number of factors in the "subscriber" inquiry weigh against Plaintiff. Not only has Plaintiff failed to allege that Luxy is a video services provider subject to the VPPA, Plaintiff has failed to allege that

she is a renter, purchaser, or subscriber of Luxy's goods or services—the only options to qualify as a "consumer" under the VPPA. For this additional reason, the Court should grant Luxy's Motion to Dismiss.

## IV.  CONCLUSION

For each of the reasons set forth above, the Complaint fails to state a cause of action and this Court should enter an order of dismissal with prejudice.

Dated:  May 2, 2023

DORSEY & WHITNEY LLP

By: _____
KENT J. SCHMIDT
JESSICA M. LEANO
Attorneys for Defendant Luxy Hair Co.

# CERTIFICATE OF SERVICE

All Case Participants are registered for the USDC CM/ECF System

*Rebekah Rodriguez v. Luxy Hair Co.,*
*USDC – Southern District of California*
*Case No.: 3:23-CV-00657 LAB (BLM)*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

I hereby certify on May 2, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Southern District of California by using the CM/ECF System.

Participants in the case who are registered CM/ECF Users will be served by the CM/ECF System.

Dated: May 2, 2023                                    DORSEY & WHITNEY LLP


                                                      By: */s/ Kent J. Schmidt*
                                                              Kent J. Schmidt