Kent J. Schmidt (SBN 195969)
schmidt.kent@dorsey.com
Jessica M. Leano (SBN 323677)
leano.jessica@dorsey.com
DORSEY & WHITNEY LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626-7655
Telephone:  (714) 800-1400
Facsimile:  (714) 800-1499

Attorneys for Defendant Luxy Hair Co.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBEKAH RODRIGUEZ,<br><br>              Plaintiff,<br><br>    v.<br><br>LUXY HAIR CO., a Nova Scotia company and DOES 1 through 10, inclusive,<br><br>              Defendants. | CASE NO: 3:23-CV-00657-LAB-BLM<br><br>Hon. Larry Alan Burns<br>Courtroom 14A<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:         June 12, 2023<br>Time:         11:15 a.m.<br>Courtroom:  14A<br><br>Complaint Filed:  March 8, 2023<br>Trial Date:  Not set |

/ / /

/ / /

/ / /

## **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................1

II.  ARGUMENT.........................................................................................................2

    A.   The Opposition's Attempt To Mask The Absence of Facts Supporting At Least Two Requirements for a VPPA Claim Falls Short. ..................................................................................................2

    B.   Luxy Is Not a Video Tape Service Provider Under the VPPA..............2

    C.   Plaintiff Has Not Alleged That She Is a "Consumer" With Standing to Assert a VPPA Claim Against Luxy. ................................6

    D.   Leave to Amend Would Be Futile. ......................................................10

III. CONCLUSION ..................................................................................................10

## **LUXY HAIR CO.'S REPLY IN SUPPORT OF MOTION TO DISMISS**

## I. INTRODUCTION

In her Opposition to Defendant Luxy Hair Co.'s Motion to Dismiss, Plaintiff Rebekah Rodriguez creates various "straw man" arguments to distract the Court from the actual disputed issues. These manufactured, non-existent battles cannot mask the fact that Plaintiff fails to state a plausible VPPA claim. And in so doing, Plaintiff attempts to present an aura of the case law supporting her claim when in reality the opposite is true. When these manufactured disputes are set aside, the following becomes clear: no court in California or anywhere else has ever held what Plaintiff is urging this court to hold. That is to say, no court has ever held that an e-commerce provider whose promotional video on a website is freely accessible to any consumer without a subscription can be liable under the VPPA. If there were such a case, Plaintiff's brief would have surely cited it.

Plaintiff attempts to rebut Luxy's two principal arguments—that it is not a video tape service provider (or its modern equivalent) and that Plaintiff is not a consumer/subscriber under the statute. But Plaintiff's argument renders any definitional limitation on either a "video tape service provider" or "consumer" meaningless. If the VPPA case law stands for anything, it supports Luxy's argument that these two limitations—one on potential defendants and the other potential plaintiffs—are meaningful definitions through which Congress circumscribed the scope of the law. Not until page 11 of Plaintiff's brief is it acknowledged that perhaps the only court in the country to ever deal with the precise issue presented here soundly rejected Plaintiff's argument. In *Carter v. Scripps Networks, LLC*, No. 22-cv-2013, 2022 U.S. Dist. LEXIS 71150 (S.D.N.Y. Apr. 24, 2023), the court considered whether a newsletter subscription offering, entirely separate from a website's video offerings, confers "subscriber" status for purposes of the VPPA. That court concluded it does not. Plaintiff makes a halfhearted attempt to distinguish the facts of that case but then resorts to simply contending it was wrongly decided. Plaintiff is wrong on both counts.

For these reasons and those in the moving papers, this Court should dismiss Plaintiff's Complaint for failure to state a plausible VPPA claim, without leave to amend.

## II.  ARGUMENT

### A. The Opposition's Attempt To Mask The Absence of Facts Supporting At Least Two Requirements for a VPPA Claim Falls Short.

Plaintiff does not, and cannot, rebut that she fails to satisfy at least two elements of a VPPA claim: (1) Luxy must be a video tape service provider and (2) Plaintiff must be a consumer.  The VPPA applies only to "A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer…" 18 U.S.C. § 2710(b)(1).  That Plaintiff may, in her view, allege facts to support other elements of the VPPA does not mean that Plaintiff can ignore the other elements altogether.  This is inadequate to state a claim that can overcome Rule 12(b)(6).

Plaintiff's attempt to cover up the missing elements of her VPPA claim begins with the introduction, where Plaintiff jumps to the conclusion that "[m]ultiple federal courts have held that similar claims were plausibly alleged." (Opp., at 1.)  Plaintiff provides a half-page footnote in support of the proposition that a "Facebook ID itself constitutes personal identifiable information." (*Id.*, at 1, n.1.)  Though Plaintiff spills much ink on this point, Luxy does not contest the PII aspects of the theory or that a Facebook ID can be PII.  Thus, Plaintiff provides a string cite of cases to support a proposition that is not even at issue.  This tactic continues throughout the Opposition, as explained below.

### B. Luxy Is Not a Video Tape Service Provider Under the VPPA.

Plaintiff takes the same approach in contending that Luxy is a "Video Tape Service Provider" by constructing a dispute over the type of technology encompassed by the VPPA and warping the statutory definition to bring Luxy within its ambit. (Opp., at 2.)  Luxy does not argue that the VPPA is constrained to a business which sells or rents "prerecorded video cassette tapes." (*See id*.)  Nor does Luxy argue that "the VPPA should be interpreted as limited to online providers of streaming videos." (*See id*.)  Rather, what Plaintiff must, and fails to, allege is that Luxy is a "video tape service provider" under the VPPA because

it is "engaged in the business" of delivering video content.  *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017).  That video cassette tapes may have been supplanted by streaming content, and the VPPA's coverage is not limited to the former cannot substitute for allegations establishing that Luxy is engaged in the business of selling or delivering, "prerecorded video cassette tapes or similar audio visual materials."  (Opp., at 2.)  Nor does Luxy, as Plaintiff claims it does, argue that no commercial website can be a "video tape service provider" under the VPPA.  (*Id.*)  Rather, simply operating a commercial website is insufficient to implicate the provisions of the VPPA.

To be sure, none of the cases Plaintiff cites in claiming Luxy is subject to the VPPA (Opp., at 2-3) involves a defendant comparable to Luxy, which is engaged in the business of selling hair extension products.  Those defendants are news and media companies, a political consulting firm, and a big box store.  As to the first group, the defendants in those cases, by Plaintiff's acknowledgement, are traditional media providers—newspapers, streaming, etc., which generate revenue from selling news or media content.

- The defendant in *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 484 (1st Cir. 2016) and *Belozerov v. Gannett Co.*, No. CV 22-10838-NMG, 2022 WL 17832185, at *1 (D. Mass. Dec. 20, 2022), "is an American media company … that owns more than 260 daily publications, including USA Today," which "has hundreds of thousands of digital subscribers" and offers paid and unpaid digital subscriptions, 2022 WL 17832185, at *1, and an app allowing users to access "news and entertainment media content, including videos, on their mobile devices."  820 F.3d at 484.

- The defendant in *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *1 (S.D.N.Y. Nov. 17, 2022), "is an international newspaper and media company" which operates "the website theepochtimes.com, where subscribers may view Defendant's video content."

- The defendant in *Lebakken v. WebMD, LLC*, No. 1:22-CV-644-TWT, 2022 WL 16716151, at *1 (N.D. Ga. Nov. 4, 2022), "owns and operates the popular website,

WebMD.com, which provides online health information and medical news to individuals and generates revenue through advertising on its website."

- The defendant in *Ambrose v. Bos. Globe Media Partners LLC*, No. CV 21-10810-RGS, 2022 WL 4329373, at *1 (D. Mass. Sept. 19, 2022), is a "multimedia organization that provides news, entertainment, and commentary across multiple brands and platforms," and maintains a website offering "news articles, photographs, images, illustrations, audio clips and video clips." (citation omitted).

- The defendant in *Louth v. NFL Enterprises LLC*, No. 121CV00405MSMPAS, 2022 WL 4130866, at *1 (D.R.I. Sept. 12, 2022), "owns and operates a mobile application ('NFL App') which disseminates live local and primetime games, exciting videos and highlights, and replays of" football games.

- Finally, the defendant in *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *2 (N.D. Cal. Aug. 10, 2012), operates a website "that provides video content, both previously released and posted and originally developed," and which spans "news, entertainment, educational, and general interest programs."

None of these companies is akin to a retailer of hair extensions which happens to have a free-to-watch, publicly-available, promotional video on its website. Nor are there meaningful similarities between Luxy and the defendants in *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 777 (N.D. Cal. 2019) or *Cappello v. Walmart Inc.*, No. 18-CV-06678-RS, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019). The defendant in *Facebook* was "a British political consulting firm" which allegedly "used personal information from millions of Facebook accounts to send targeted political messages …." 402 F. Supp. 3d at 777. And the *Cappello* defendant is Walmart, a big box store which sells "a variety of consumer goods, including DVDs, Blu-ray Discs, video games, and other video media" in stores and online. 2019 WL 11687705, at *1.

While the courts in these cases may have found the allegations enough to establish that the defendant may have been engaged in the business of delivering video content for purposes of pleading that element of a VPPA claim, none requires the same conclusion as

4

to Luxy. The cases Plaintiff cites cement that the defendant's "product" must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose. (Opp., at 4.) Again, Luxy's "product" is hair extensions. It does not sell streamed media or news content, Blu-Rays, or DVDs. It does not sell SmartTVs which "stream[] video content via Internet-connected software." Opp., at 4 (citing *Vizio*, 238 F. Supp. 3d at 1221). Nor does it sell a place for content creators to host videos and fans to access them. *See* Opp., at 5 (citing *Stark v. Patreon*, _ F. Supp. 3d _, 2022 U.S. Dist. LEXIS 187602, at *21-22 (N.D. Cal. Oct. 13, 2022)).

In attempting to align Luxy with these defendants, Plaintiff points to the section of *Vizio* where the court distinguished a letter carrier who places a package with a video tape into a mailbox from that defendant, the "second-largest manufacturer of 'Smart TVs,' cutting-edge televisions equipped with integrated software that enables consumers to access the Internet and on-demand services such as Netflix, Hulu, and Pandora." 238 F. Supp. 3d at 1211-12. Plaintiff concludes that Luxy is "much closer" to the Smart TV manufacturer than the letter carrier because Luxy's website is configured to host and play promotional videos. (Opp., at 4.) Having a website "designed" to play videos is not the same; nor is the standard whether a website can host a video. (*Id*.) And at the same time, Plaintiff acknowledges why Luxy and the Smart TV provider are inapposite. (*Id*.) Luxy's "business model involves using pre-recorded videos to promote and monetize its products." (*Id*.) Those products are hair extensions. Thus, Luxy is neither the letter carrier nor the app-loaded Smart TV seller because in either scenario there is some type of exchange for video content. There is no exchange for a video in what Luxy does.

Further, Plaintiff's, not Luxy's, "reliance upon *Stark* … is misplaced." (Opp., at 5.) The *Stark* court held that defendant Patreon could be a "video tape services provider" for purposes of pleading a VPPA claim that could survive Rule 12(b)(6). The very part of *Stark* that Plaintiff cites cements why Luxy and Patreon are not the same under the VPPA. (Opp., at 5.) Patreon's business model involves "third-party" video content creators who "deliver" video content by way of Patreon's platform. 2022 U.S. Dist. LEXIS 187602, at

5
REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
CASE NO. 3:23-CV-00657-LAB-BLM

*21-22.  Plaintiff does not draw any parallel between Patreon's business model and Luxy's to create a meaningful comparison under the VPPA.

Finally, Plaintiff's last-ditch argument about "interstate and foreign commerce," as the phrase appears in the VPPA, does nothing.  In emphasizing that the VPPA may apply to "any person, engaged in the business, in or affecting interstate or foreign commerce … ," Plaintiff creates yet another strawman.  Luxy has not argued that no commercial website can fall within the ambit of the VPPA.  Rather, the Motion to Dismiss establishes why Luxy—a commercial retailer of hair extension products—is not subject to the VPPA simply because it has a standard e-commerce website with a promotional video.

In sum, Plaintiff has not stated a claim that can survive Luxy's Motion to Dismiss absent facts establishing that Luxy is a "video tape service provider" under the VPPA.

## C. Plaintiff Has Not Alleged That She Is a "Consumer" With Standing to Assert a VPPA Claim Against Luxy.

Next, Plaintiff completely disregards the standard for qualifying as a "consumer" under the VPPA.  The VPPA only applies where a "video tape service provider [] knowingly discloses, to any person, personally identifiable information concerning any *consumer* of such provider." 18 U.S.C. § 2710(b)(1) (emphasis added).  A "consumer" is limited to "any renter, purchaser, or subscriber of" the provider's "goods or services." *Id*. § 2710(a)(1).  While the VPPA may not define "subscriber," the case law certainly does.  Whether there is a "subscription" relationship turns on factors, including whether there is a "commitment, relationship, or association" between the consumer and the provider. *Vizio*, 238 F. Supp. 3d at 1222 (citing *Ellis v. Cartoon Network, Inc*., 803 F.3d 1251, 1252 (11th Cir. 2015)); *Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015).  Plaintiff alleges no more than that Luxy has a video on its website which anyone, from a hair extension consumer to someone who stumbled upon the website by accident, can freely view.  Conferring "subscriber" status on these facts would run contrary to VPPA case law and make the statutory langage meaningless.

In trying to mask the lack of facts supporting the "consumer" requirement, Plaintiff manufactures another battle over whether payment is required to be a subscriber. (Opp., at 5-6.) Luxy does not claim that there is a bright-line rule about payment; rather, payment is a factor, and one that weighs against Plaintiff here. (Mot., at 7-8.) In fact, Luxy does not, as Plaintiff contends, argue that because Luxy's website is "free," any "subscriber" relationship is foreclosed. (Opp., at 6.) Rather, what matters for purposes of the payment factor is that Luxy's promotional video is free to access and watch. Besides the unavailing contention about the payment factor, Plaintiff does not explain how any other factor— registration, commitment, delivery, expressed association, or access to restricted content— weighs in her favor to sufficiently allege she is a "subscriber." *Ellis*, 803 F.3d at 1256.

Instead, Plaintiff muddies the issues by asking the Court to follow the First Circuit's decision in *Yershov*, 820 F.3d 482, which Plaintiff contends requires an expansive interpretation of "subscription." (Opp., at 7.) But *Yershov* provides even more grounds to find Plaintiff is not a "subscriber." (*Id.*) The Opposition emphasizes the following: "plaintiff's decision to download the App seems a fair enough indication that he intended more than a one-shot visit." (*Id.*) (quoting 820 F.3d at 487). How this aids Plaintiff is unclear, as Plaintiff does not allege that she had to download an app to view Luxy's video. Not only that, each time that plaintiff sought to access video content, he had to provide defendant with personal information, "such as his Android ID and his mobile device's GPS location at the time he viewed a video, each linked to his viewing selections." *Id.* This bore on the "commitment" factor, as "access was not free of a commitment to provide consideration in the form of that information, which was of value to Gannett." *Id*. "And by installing the App on his phone, … [plaintiff] established a relationship with Gannett that is materially different from what would have been the case had USA Today simply remained one of millions of sites on the web that [plaintiff] might have accessed through a web browser." The allegations here place Luxy squarely in the latter vis-à-vis Plaintiff—

it is one of "millions of sites on the web" Plaintiff could access. The indicia of a commitment sufficient to overcome a motion to dismiss in *Yershov* is absent here.[1]

Plaintiff's next contention, that she provided her email address to sign up for Luxy's newsletter, and her email address is PII, is another strawman. Plaintiff asks the Court to "infer that by signing up to receive Defendant's online newsletter, Plaintiff necessarily provided her email address, which is indisputably personal information to Defendant." (Opp., at 8.) For starters, Luxy does not raise the question of whether an email address can be PII. Nor does this contention supply the necessary subscription relationship because nothing suggests that Plaintiff had to provide her email to *watch* or *access* a video. Plaintiff is constructing a "subscription" when her decision to sign up for a promotional newsletter was wholly unrelated to viewing a video. Thus, the citation to *Belozerov*, 2022 WL 17832185, is misplaced, and Plaintiff highlights the distinction from the "subscription" in that case from the claimed "subscription" here. (Opp., at 9.) The plaintiff in that case provided his name and email address *in order to* obtain a "USA Today digital subscription" which granted him access "to view videos through defendant's website and app. *Id*. at *1.

Critically, Plaintiff does not contend that she was required to provide any information to Luxy or sign up for a promotional newsletter before she could view the promotional video. That Plaintiff signed-up for a newsletter unrelated to video access is a red herring, as established further below. So too is Plaintiff's reliance on *Lebakken* simply because that plaintiff claimed she provided her email address to sign up for an account—which Plaintiff does not allege here—and an e-newsletter with additional video content—which Plaintiff does not allege here. 2022 WL 16716151, at *1.

Similarly, the argument that a "subscription" under the VPPA is not restricted "to a person who subscribes to services by a particular method or location" is another straw

---

[1] Puzzlingly, Plaintiff points to a "disagreement" between *Ellis* and the district court decision in *Yershov*, which was later reversed by the First Circuit. (Opp., at 6). The significance of this "disagreement" is unclear. That the *Ellis* court may have preferred the lower court's reasoning in Yershov makes no difference to this Court. (*Id*. at 7.)

man. (Opp., at 10.) What remains missing is the required nexus between the subscription and the video content. Plaintiff's interpretation of the statute is so broad that it makes the term "subscriber" meaningless. If the Court were to accept Plaintiff's interpretation, a "subscriber" would be anyone who sees a video on a website as long as they have in some way provided their email to the defendant, even if completely unrelated to video content.

Finally, Plaintiff concludes by attempting to distinguish *Carter*, a newly-issued NY federal district court decision which granted a motion to dismiss a VPPA claim based on virtually identical allegations to Plaintiff's. 2022 U.S. Dist. LEXIS 71150. In *Carter*, plaintiffs claimed that HGTV violated the VPPA through its use of a Facebook Pixel on hgtv.com, where visitors can access "hundreds of videos featuring home and lifestyle content." *Id*. at *3. As the Court should find here, that complaint failed to allege a claim that could overcome Rule 12(b)(6) because it did not plausibly allege that plaintiffs were "subscribers" under the VPPA. *Id*. at *9. Trying to downplay *Carter*, Plaintiff criticizes the court for making "no attempt to interpret" what "subscriber" means, and even more boldly claims that the VPPA does not "define or restrict the meaning of the term 'subscriber' to 'subscribers' or 'audio visual materials.'" (Opp., at 11.) Not so.

In *Carter*, plaintiffs deemed themselves "subscribers" because they entered their email addresses to sign-up for email newsletters. 2022 U.S. Dist. LEXIS 71150, at *3. But as here, the plaintiffs did not allege "that a newsletter subscription was required" to access videos on HGTV's website, to log-in, or conferred any extra benefits. *Id*. at *18. Citing *Austin-Spearman*, *Ellis*, *Yershov*, and *Czarnionka*, the court rejected plaintiffs' contention that their subscriptions to hgtv.com newsletters made them "subscribers under the VPPA." *Id*. at *13. To so find would require the court to read the definition of "consumer" in isolation. *Id*. at *14. While plaintiffs may have been "subscribers to newsletters," they did not allege they were "subscribers to audio visual materials," the group the VPPA intends to protect. *Id*. at *17. Indeed, the *Carter* court aptly recognized that the statute is about video content. Thus, the term "subscriber" clearly means there must be a connection to the video content.

Further attempting to discredit *Carter*, Plaintiff claims *Carter*'s holding "surely frustrates" the VPPA's privacy-related goals. This is unsupported by any citation. The legislature's goal surely was not holding any business liable under the statute simply because it has some type of video on a public website. Moreover, *Carter* carries great persuasive value since it may be the only case to address an identical attempt to impose VPPA liability by bootstrapping a separate email newsletter to a video service. *Carter* rejected this notion. Plaintiff, too, is "free to watch or not watch" Luxy's promotional videos "without any type of obligations." *Id*. at *18. If *Carter* is distinguishable in any way, it is on the basis that HGTV's business is delivering video content, *id*. at *2, while Luxy simply provides videos incidental to its business. If no liability was found under these facts for HGTV, the conclusion of no liability for Luxy is even more compelling.

### D.   Leave to Amend Would Be Futile.

The Court may dismiss without leave to amend where a plaintiff's "proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (requiring some reasoning as to how the pleading could "possibly be cured"). Here, Plaintiff has not identified any proposed amendment or explained how amendment could cure the deficiencies in her VPPA claim. Therefore, the Court should deny Plaintiff's request and dismiss the Complaint without leave to amend.

## III.   CONCLUSION

For each of the reasons set forth above, the Complaint fails to state a cause of action and this Court should enter an order of dismissal with prejudice, without leave to amend.

Dated:  June 5, 2023                               DORSEY & WHITNEY LLP

By: */s/ Kent J. Schmidt*
KENT J. SCHMIDT
JESSICA M. LEANO
Attorneys for Defendant Luxy Hair Co.

# CERTIFICATE OF SERVICE

All Case Participants are registered for the USDC CM/ECF System

*Rebekah Rodriguez v. Luxy Hair Co.,*
*USDC – Southern District of California*
*Case No.: 3:23-CV-00657 LAB (BLM)*

**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

I hereby certify on June 5, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Southern District of California by using the CM/ECF System.

Participants in the case who are registered CM/ECF Users will be served by the CM/ECF System.

Dated:  June 5, 2023                          DORSEY & WHITNEY LLP


                                              By: */s/ Kent J. Schmidt*
                                                    Kent J. Schmidt